IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
**Northern Division**

| | |
|---|---|
| JESSICA KING | : |
| 423 Lorraine Avenue | |
| Essex, Maryland 21221, | : |
| | |
| Plaintiff, | : |
| | |
| vs. | :   Case No. _____ |
| | |
| MEDSTAR HEALTH, INC. | : |
| 10980 Grantchester Way | |
| Columbia, MD 21044, | : |
| | |
| Serve on: | : |
|     The Corporation Trust, Inc. | |
|     2405 York Road, Suite 201 | : |
|     Lutherville, Maryland 21093 | |
| | : |
| and | |
| | : |
| FRANKLIN SQUARE HOSPITAL | |
| CENTER, INC. | : |
| 9000 Franklin Square Drive | |
| Baltimore, Maryland 21237 | : |
| | |
| Serve on: | : |
|     The Corporation Trust, Inc. | |
|     2405 York Road, Suite 201 | : |
|     Lutherville, Maryland 21093 | |
| | : |
| Defendants. | |

...oooOooo...

## **COMPLAINT**

NOW COMES Plaintiff Jessica King, by and through her attorneys, Andrew M. Dansicker, D. H. Andreas Lundstedt and the Law Office of Andrew M. Dansicker, LLC, and hereby files this Complaint against MedStar Health, Inc. ("MedStar") and Franklin Square Hospital Center, Inc. ("FSHC") (together "Defendants") for interference and retaliation under

the Family and Medical Leave Act ("FMLA"), violation of Maryland's Health Care Worker Whistleblower Protection Act ("MHCWWPA"), and wrongful termination under Maryland law, and in support thereof states the following:

## THE PARTIES

1. Plaintiff Jessica King is a resident of Essex, Maryland, and a former long-term employee of Defendants.

2. Defendant MedStar is one of the largest healthcare and hospital organizations in Maryland. MedStar employs more than thirty thousand employees throughout Maryland and the United States, maintaining its principal office in Columbia, Maryland.

3. Defendant FSHC manages and/or operates MedStar Franklin Square Medical Center in Baltimore, Maryland. FSHC employs more than five hundred employees throughout Maryland, maintaining its principal office in Baltimore, Maryland.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper in this Court pursuant to 42 U.S.C. § 12101 *et seq.* as the case arises under federal law, the FMLA, and personal jurisdiction is proper in this Court, because Defendants transact extensive business in Maryland, and the events giving rise to this litigation took place in Maryland.

5. Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in the District of Maryland, Northern Division.

## FACTS

6.     Ms. King began working for Defendants in or about June 1999, and during her employment, she has frequently been recognized for her successful job performance as a Surgical Technologist and praised for her dedication to her job.  At no point during her twenty years of dedicated service has Ms. King ever received a negative job performance review, nor has she ever been disciplined or placed on a performance improvement plan relating to her job performance.

7.     Beginning in or about May 2019, Ms. King applied for and was approved for FMLA intermittent leave for her radiation treatments (and other medical treatments as well as sick time) related to her breast cancer.

8.     Between May 2019 and September 2019, Ms. King took advantage of her intermittent FMLA leave on numerous occasions for surgical procedures, radiation treatment, sick days and medical appointments and testing.

9.     In fact, during that time frame, she missed approximately eight weeks of work for medical reasons relating to her breast cancer.

10.    As a result of her need to take time off work pursuant to the FMLA, Ms. King's supervisor, Megan Cullum, Operating Room Manager, the Charge Nurse, Beth Davis, and the PRN Charge Nurse/Assistant Nurse Manager, Eileen Opdyke, repeatedly expressed dissatisfaction and frustration at the fact that Ms. King needed to take significant time off for medical reasons, and they were not shy about showing their disapproval.

11.     For example, on one occasion, Ms. Opdyke falsely informed Ms. King that doctor's appointments were not covered by FMLA, and Ms. King was required to reschedule a doctor's appointment.

12.     Likewise, on several occasions when Ms. King told Ms. Cullum about dates that she would be out for medical issues, Ms. Cullum would slam her pencil on her desk or tell her that she did not believe that Ms. King's medical appointments were covered by FMLA.

13.     On September 10, 2019, Ms. King noticed that surgical instruments that she was prepping for a surgical procedure in the hospital's da Vinci Surgical Robotic Room had not been properly sterilized and posed a substantial and specific danger to the health of surgical patients.

14.     This was not the first time that Ms. King had noticed similar sterilization problems with surgical instruments in the operating room; in fact, on several previous occasions during August and early September, she had reported such issues to the DaVinci Robotic Coordinator, Sandy Gunesdogdu, and the Assistant Robotic Coordinator, Tracy Spencer, but nothing was done to address the problem, and she had been ordered to use the instruments even though they had not been properly sterilized (Beth Davis, a charge nurse, had also instructed her to use the non-sterilized instruments on patients).

15.     On this instance, after discussing the matter with a nurse working in the same operating room, Marguerite Coale, who had also noticed and reported sterilization problems during the past several months, and after checking additional instruments, and finding that those instruments had also not been properly sterilized, Ms. King and Ms. Coale refused to violate Maryland law and medical rules by using the non-sterile instruments and potentially placing patients at risk of infection, and they closed the Robotic Room and reported the improper

sterilization issues to the surgeon (whose scheduled surgery was postponed), as well as to Joe Bunker, Assistant Nurse Manager, and Ms. Cullum.

16. When Ms. King told Ms. Cullum that she refused to move forward using unsterilized instruments that could place patients at risk of infection, as she believed that such action would be unlawful and would violate medical rules and her ethical code, and that she and Ms. Coale were filing an occurrence report, Ms. Cullum became extremely angry and ordered her not to file an occurrence report and told her that she would handle the situation.

17. They proceeded to file the occurrence report as they were required to do pursuant to MedStar's and Franklin Square Hospital rules and regulations.

18. Incredibly, the very next day, on September 11, 2019, Ms. King was issued a written warning (that had been backdated) for alleged attendance issues, even though nearly every date for which she was disciplined was a date when she missed work for medical issues relating to her breast cancer treatment that were covered by her intermittent FMLA leave.

19. For example, she was disciplined for "unexcused absences" on April 1, 2 and 30, June 10 and 11, and August 23, even though she was approved for intermittent FMLA leave on each of those dates.

20. She was also disciplined for not showing up to work on a day on which she was not even scheduled to work.

21. In addition, the dates for which she was being disciplined had occurred weeks earlier – no reason was given for why she was suddenly now being issued a written warning for past attendance issues (except, obviously, that she had angered management by raising the improper sterilization issues the previous day).

22. The written warning made no sense, in light of the fact that Ms. King was familiar with the call-out procedure, whereby she was required to contact Matrix, which handles Franklin Square's medical leave and FMLA leave, whenever she needed to miss work for medical reasons, and she consistently followed those procedures whenever she needed to take FMLA leave.

23. Shortly thereafter, on October 1, 2019, Ms. King received a second written warning, once again for multiple dates when she had approval for intermittent FMLA leave, either for a late arrival to work or an early exit form work because of medical appointments or health issues relating to her breast cancer.

24. On October 9, 2019, Ms. King's employment was terminated, allegedly because she acted unprofessionally by slamming down several instruments, expressing dissatisfaction with her assignment and abandoning a patient.

25. These allegations were patently false – in fact, in more than twenty years of employment, Ms. King had never been accused of any such conduct. Moreover, she had not abandoned the patient – the procedure was finished, and she had told the nurse that she was going to take the dirty cart out as part of the clean up procedure and then went to the restroom, which was the same procedure she had followed for years at the end of a procedure. At no point in the past had she ever been told that there was anything wrong with her conduct.

26. Defendants' decision to terminate Ms. King's employment, allegedly because of an alleged minor rule violation, was a pretextual charade intended to cover up the fact that Ms. King had recently refused to engage in potentially unlawful or unethical conduct and had reported and refused to stay quiet about the infection control failures and potential patient

6

contamination at Franklin Square that put patients at risk of infection and was continuing to demand that Franklin Square take the action to address the dangerous and unsafe situation.

27. In addition, Defendants' decision to terminate Ms. King's employment was retaliation for Ms. King's repeated use of intermittent FMLA leave and missing time because of her disability, breast cancer.

28. On February 10, 2020, the Maryland Department of Labor, Licensing and Regulation ("DLLR") awarded unemployment benefits to Ms. King after finding that "the employer failed to proffer sufficient evidence to support the conclusion the claimant violated the employer's Code of Conduct policy. There is no showing of concrete instances in which the claimant's actions and/or inactions rose to the level of misconduct."

## COUNT I

## FMLA – INTERFERENCE/RETALIATION

29. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

30. During all relevant times, Defendants were Ms. King's "employer" under the FMLA as they employed fifty or more employees within a 75-mile radius of Mr. King's work site or potential work site during 20 or more calendar workweeks in 2018 and/or 2019.

31. During all relevant times, Ms. King was an "employee" under the FMLA as she worked for Defendants for more than twelve months and for more than 1,250 hours in the twelve months before she separated her employment in 2019.

32. During 2019, Ms. King repeatedly requested time off in the form of intermittent FMLA leave because she was undergoing treatment for breast cancer.

33.     While Defendants granted her requests for FMLA leave, Ms. King was subjected to harassment and humiliation by her managers because she used FMLA leave, and she was ultimately subjected to retaliation and termination of her employment, in whole or in part, because of her frequent use of intermittent FMLA leave.

34.     Such conduct by Defendants constituted interference and/or retaliation against Ms. King for exercising her rights under the FMLA.

35.     Such conduct by Defendants was willful and was expressly predicated on Ms. King's attempts to exercise her rights under the FMLA.

36.     As a direct result of Defendants' improper and illegal conduct, Ms. King has suffered substantial financial damages and emotional distress.

WHEREFORE, Ms. King demands judgment in an amount greater than two-hundred thousand dollars ($200,000.00) against Defendants in compensatory damages, including back pay, front pay, liquidated damages, attorneys' fees, interest, costs, and any and all other relief deemed appropriate by this Court, including but not limited to injunctive relief requiring Defendants to reinstate Ms. King.

## COUNT II

## MARYLAND HEALTH CARE WORKER WHISTLEBLOWER PROTECTION ACT

37.     Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

38.     During all relevant times, Defendants were Ms. King's "employer" and Ms. King was an employee of Defendants as set forth in the MHCWWPA.

39. Defendants terminated Ms. King's employment, in whole or in part, because she disclosed to her supervisors an activity or practice that violates a law, rule or regulation, namely the use of unsterilized medical equipment in a surgical room that placed patients at risk of infection.

40. Defendants also terminated Ms. King's employment, in whole or in part, because she objected to and/or refused to participate in an activity or practice in violation of a law, rule or regulation, namely the use of unsterilized medical equipment in a surgical room.

41. Defendants use of unsterilized medical equipment in a surgical room posed a substantial and specific danger to public health and safety.

42. Ms. King had a reasonable, good faith belief that Defendants were engaged in activity or practices that were in violation of a law, rule or regulation.

43. Ms. King followed Defendants' corporate compliance plans and reported the improper use or attempted use of unsterilized surgical equipment to her supervisors and management.

44. As a direct result of Defendants' improper and illegal conduct, Ms. King has suffered substantial financial damages and emotional distress.

   WHEREFORE, Ms. King demands judgment in an amount greater than two-hundred thousand dollars ($200,000.00) against Defendants in compensatory damages, including back pay, front pay, liquidated damages, attorneys' fees, interest, costs, and any and all other relief deemed appropriate by this Court, including but not limited to injunctive relief requiring Defendants to reinstate Ms. King.

## COUNT III

## WRONGFUL TERMINATION

45. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

46. During all relevant times, Defendants were Ms. King's "employer" and Ms. King was employed by Defendants.

47. During 2019, Ms. King reported unlawful or unethical conduct, i.e., the use of unsterilized surgical instruments in a surgery room, and in September 2019, Ms. King refused to engage in or participate in unlawful or unethical conduct including the use of unsterilized medical equipment for surgical purposes in a surgery room.

48. Defendant's terminated Ms. King's employment, in whole or in part, because she reported and refused to engage in unlawful and/or unethical conduct that would have placed surgical patients at substantial danger, including the risk of infection.

49. Ms. King refused to commit an unlawful and/or unethical act in violation of a clear mandate of public policy.

50. The use of unsterilized medical equipment in a surgical room to perform surgical procedures on medical patients in against Maryland public policy and is unlawful and/or unethical conduct.

51. Such conduct by Defendants was willful and was expressly predicated on Ms. King's refusal to engage in or participate in unlawful or unethical conduct, namely use of unsterilized instruments in a surgical room.

52.     As a direct result of Defendants' improper and illegal conduct, Ms. King has suffered substantial financial damages and emotional distress.

WHEREFORE, Ms. King demands judgment in an amount greater than two-hundred thousand dollars ($200,000.00) against Defendants in compensatory damages, including back pay, front pay, liquidated damages, attorneys' fees, interest, costs, and any and all other relief deemed appropriate by this Court, including but not limited to injunctive relief requiring Defendants to reinstate Ms. King.

Dated: October 8, 2020                                          Respectfully submitted,


                                                                 _____/s/_____
                                                                 Andrew M. Dansicker (Bar # 11765)
                                                                 D. H. Andreas Lundstedt (Bar # 28620)
                                                                 Law Office of Andrew M. Dansicker, LLC
                                                                 Executive Plaza II, Suite 705
                                                                 11350 McCormick Road
                                                                 Hunt Valley, Maryland 21031

                                                                 adansicker@dansickerlaw.com
                                                                 andreas.lundstedt@gmail.com

                                                                 *Counsel for Plaintiff Jessica King*

## **PRAYER FOR JURY TRIAL**

Plaintiff Jessica King hereby requests a jury trial.

_____/s/_____
Andrew M. Dansicker
